IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL OAKES, | * |
|     Plaintiff, | * |
| v. | *    Civil Action No. GLR-14-2002 |
| DEPARTMENT OF PUBLIC SAFETY, et al., | * |
|     Defendants. | * |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants', Sgt. Treme Stone, Lt. Pius Uwalor, Lt. Brandon Barnett, Officer Misbau Raji, and Sgt. Iwill Mason (collectively, "Defendants"), Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 14) and Plaintiff Michael Oakes's Motion to Appoint Counsel (ECF No. 39). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant in part and deny in part Defendants' Motion and grant Oakes's Motion.

### I.    BACKGROUND

Oakes is a Maryland Division of Correction ("DOC") inmate currently incarcerated at Brockbridge Correctional Facility. Defendants are corrections personnel employed by the DOC who work at Jessup Correctional Institution ("JCI"), Oakes' previous place of incarceration. In exhibits attached to the Complaint, Oakes alleges a use of force incident happened at 2:30 p.m. on December 17, 2012, in B-Building, C-Wing. (Compl. at 4, ECF No. 1-1).[1] Oakes states Raji, without provocation, threw him to the ground. (Id. at 4). Oakes pleads he was taken to the

---

[1] Unless otherwise noted, the Court shall cite to the pagination found in the electronic docketing system.

medical department following this incident because of the bruising, swelling, and bloody nose he suffered. (Id. at 4–5). He alleges a second incident occurred between 3 and 4:00 p.m. that same day, while he was under escort from the medical department to a cell in lockup. (Id. at 5). Oakes states an unknown officer grabbed and twisted his wrists. (Id.). Barnett and Uwalor then forced him to the ground and kicked him in the face, back, head, and private area. (Id.). He alleges Barnett then pulled up and threw him into a wall. (Id. at 4–5). Oakes asserts this second incident was videotaped by Stone and that he sustained a swollen face, black eyes, scrapes, cuts and bruises, blood in his urine, and partial loss of movement in his left wrist which continued for several days. (Id.at 5–6, 9). Oakes states generally that his personal property was damaged during the second incident and that after he requested a copy of the video, officers began "an intimidation campaign" against him. (Id. at 44).

Oakes filed a complaint on June 20, 2014, raising 42 U.S.C. § 1983 claims for excessive use of force, failure to provide medical care, and retaliation. (ECF No. 1). In addition to unspecified money damages, Oakes asks that disciplinary action be taken against Defendants. (Compl. at 3). He amended his Complaint to provide Defendants' names on July 17, 2014. (ECF No. 5). The Court dismissed the Department of Public Safety and the Inmate Grievance Office on August 7, 2015. (ECF No. 6).

On November 5, 2014, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 14). On November 24, 2014, Oakes filed a "Response to Motion for Dismissal" opposing Defendants' Motion. (ECF No. 16). On March 25, 2015, this Court denied Defendants' Motion without prejudice and ordered counsel to file copies of Vicon Net video recordings purportedly showing the interaction between Barnett, Raji, and Oakes outside the day room on the tier, as well as the interaction between Oakes and several

officers outside the medical department. (ECF No. 21). This supplemental material was filed on April 24, 2015. (ECF No. 24). Oakes was provided the opportunity to review the recordings. (Burton Decl. Ex. 1 at ¶¶ 2-4, ECF No. 24-1; Richardson Decl. Ex. 2 at ¶¶ 1-2, ECF No. 24-2). Oakes filed a Supplemental Opposition Response (ECF No. 25), and Defendants filed a Reply. (ECF No. 28).

On June 5, 2015, the Clerk received a Motion for Voluntary Dismissal (ECF No. 29), which Defendants did not oppose. (ECF No. 30). Oakes' Motion did not contain his Inmate Identification Number and the signature on the Motion did not match his signature on previous pleadings. (Staff Note of June 8, 2015). The Court then directed Oakes to clarify whether the Motion for Voluntary Dismissal was, in fact, filed by him or on his behalf. (ECF No. 31). Oakes indicated he did not file the Motion (ECF No. 32), and on October 6, 2015, the Motion was denied. (ECF No. 34). On May 4, 2016, Oakes notified the Clerk that he was no longer housed at JCI. (ECF No. 38).

## II. DISCUSSION

### A. Standard of Review

In this case, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. (ECF No. 22). A motion styled as a motion to dismiss or, in the alternative, for summary judgment implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012). In the Court's discretion, it will not convert Defendants' Motion to Dismiss into a Motion for Summary Judgment.

A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not state "a plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)) (internal quotation marks omitted), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

Pro se pleadings, however, are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).

Here, Oakes attaches several exhibits to his Complaint; indeed, all of his allegations are found in his exhibits. At the 12(b)(6) stage, the court may consider the documents attached to the complaint. Abadian v. Lee, 117 F.Supp.2d 481, 485 (D.Md. 2000); see Fed.R.Civ.P. 10(c). When the "bare allegations of the complaint" conflict with any exhibits, however, whether attached or adopted by reference, the exhibits prevail. RaceRedi Motorsports, LLC v. Dart

4

Mach., Ltd., 640 F.Supp.2d 660, 664 (D.Md. 2009) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

**B.**     **Analysis**

    **1.**     **Sovereign Immunity**

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, see Md. State Gov't Code Ann., § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. To the extent that Oakes seeks damages from Defendants in their official capacities, Defendants correctly state that they are immune from such damages. See Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 760 (2002); Brandon v. Holt, 469 U.S. 464, 471–72 (1985).

    **2.**     **Administrative Exhaustion**

Defendants argue that Oakes' claim against Defendant Raji and his claims concerning denial of medical care should be dismissed because none of these claims was fully exhausted through the administrative process. "Motions to dismiss for failure to exhaust administrative remedies are governed by Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction." Khoury v. Meserve, 268 F.Supp.2d 600, 606 (D.Md. 2003). Accordingly, Defendants' Motion will be treated as a motion to dismiss for lack of subject matter jurisdiction for the purpose of their exhaustion argument. See Fed.R.Civ.P. 12(b)(1); Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (explaining that "a failure by the plaintiff to exhaust administrative remedies

5

concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim").

When considering Defendants' exhaustion argument under Rule 12(b)(1), courts may consider the pleadings as "mere evidence" as well as "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)). Thus, the Court will consider Oakes' Complaint and Defendants' exhibits in order to evaluate whether Oakes has exhausted his administrative remedies.

The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (2012). The PLRA's exhaustion provision requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004). Exhaustion is mandatory and the Court may not consider a claim that has not been exhausted. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016); Jones v. Bock, 549 U.S. 199, 219–20 (2007).

Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. See Jones, 549 U.S. at 215–16 (2007); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.2d 674, 682 (4th Cir. 2005). Administrative remedies must, however, be available to the prisoner and this

Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007).

In Maryland, the administrative remedy process ("ARP") involves a three-step process. In order to show failure to exhaust, the defendant must demonstrate that the plaintiff failed to appeal his grievance through all three steps in the administrative process. Filing a request for administrative remedy with the warden of the prison is the first of three steps in the ARP process. See Md. Code Regs. § 12.07.01.04 (2016). The ARP request must be filed within thirty days of the date on which the incident occurred, or within thirty days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. Id. § 12.07.01.05A. If the request is denied, a prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. Id. § 12.07.01.05C. If the appeal is denied, the prisoner has thirty days to file a grievance with the Inmate Grievance Office ("IGO"). See Md. Code Corr. Servs. §§ 10-206, 10-210 (West 2016); Regs. §§ 12.07.01.03, 12.07.01.05B.

Complaints are reviewed preliminarily by the IGO. See Corr. Servs. § 10-207; Regs. § 12.07.01.06A. If a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. See Md. Cts. & Jud. Proc. Code § 10-208(c); Regs. 12.07.01.07–08. A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his remedies. See id. § 10-210. But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. See Cts. & Jud. Proc. § 5-1003 (West 2016).

At bottom, the Court concludes Oakes exhausted his administrative remedies because an IIU investigation into Oakes' claims foreclosed the ARP process, rendering his administrative remedies unavailable.

The only limitation on the PLRA's exhaustion requirement is that the remedy must be "available." 42 U.S.C. § 1997e. In Ross v. Blake, the Supreme Court articulated three circumstances in which an administrative remedy is unavailable: (1) when the process "operates as a simple dead end" with prison officials "unable or consistently unwilling to provide any relief" to prisoners; (2) when the process is "so opaque" or confusing that it is "essentially 'unknowable' – so that no ordinary prisoner can make sense of what it demands;" and (3) when prison officials thwart inmates from using the process "through machination, misrepresentation, or intimidation." 136 S.Ct. 1850, 1859–60 (2016).

In Ross, the Supreme Court remanded the prisoner's claims for further consideration of whether the prisoner had remedies "available" to him. Id. at 1863. The prisoner did not seek a remedy through the ARP for an alleged incident of excessive force because he thought the IIU investigation into the incident served as a substitute process. Id. at 1855. Even though the prisoner did not pursue a grievance through any of the steps of the ARP, the Court reasoned that because prisons routinely dismiss ARP grievances when parallel IIU investigations are pending, the routine dismissal "raise[s] questions" about whether the prisoner "had an 'available' administrative remedy to exhaust." Id. at 1860; see also Md. Div. of Corr., Directive 185–003, § VI(N)(4) (Aug. 27, 2008) (mandating that the Warden "shall issue a final dismissal of [an ARP] request for procedural reasons when it has been determined that the basis of the complaint is the same basis of an investigation under the authority of the [IIU]").

Ross is consistent with the decisions of several other judges in this district that an IIU investigation renders administrative remedies unavailable. See, e.g., Brightwell v. Hershberger, No. DKC-11-3278, 2016 WL 4537766, at *9 (D.Md. Aug. 31, 2016); Shiheed v. Shaffer, No. GLR-14-1351, 2015 WL 4984505, at *3 (D. Md. Aug. 18, 2015). In Brightwell, even though the prisoner refused to participate in his IGO hearing, the Court concluded that he nonetheless exhausted his administrative remedies because a pending IIU investigation "shuts down the ARP process and thus exhausts administrative remedies" when the grievance falls within the ARP jurisdiction.[2] Brightwell, 2015 WL 4984505, at *9.

Here, Oakes filed two main ARP grievances: One alleging an initial assault by Raji (Defs. Mot. Dismiss Alt. Mot. Summ. J. Ex. 12 ["January 15 ARP"] at 1–2, ECF No. 14-15), and a second one alleging subsequent misconduct by Barnett, Mason, and Uwalor occurring near the property room on December 17, 2012 ("December 18 ARP") (Compl. at 9). The Warden dismissed the January 15 ARP because the IIU was reviewing the incident.[3] (January 15 ARP at 1–3). The Warden dismissed the December 18 ARP as without merit. (Compl. at 13). Oakes appealed the Warden's dismissal of the December 18 ARP to the Commissioner of Correction, who dismissed the appeal because the IIU was investigating the case. (Compl. at 33). Thus, the existence of an IIU investigation into Oakes' claims against the Defendants "shut[] down the ARP process" and Oakes no longer had any available administrative remedies. See Brightwell, 2015 WL 4984505, at *9.

---

[2] Brightwell acknowledged the possibility that in some cases, the IGO would have jurisdiction but the ARP process would not, making it possible that an IIU investigation would not exhaust a prisoner's remedy—IIU investigations only prevent further ARP proceedings. Id. at *8. This is not the case here, because claims for excessive use of force fall within ARP jurisdiction. Regs. §§ 12.07.01.01B(8).

[3] The Warden also stated the January 15 ARP was duplicative of the December 18 ARP. (January 15 ARP at 2). The December 18 ARP was eventually dismissed because of a pending IIU investigation as well. (Compl. at 33).

Defendants argue that Oakes failed to exhaust his administrative remedies because when he appealed the dismissal of the January 15 ARP to the IGO, he never responded to the IGO's request for required paperwork. Defendants rely on Woodford v. Ngo's holding that exhaustion of administrative remedies requires proper exhaustion, including compliance with procedural rules, which Oakes purportedly failed to meet when he did not submit the required paperwork. See 548 U.S. 81, 90–91. But Oakes's failure to submit required paperwork to the IGO is of no consequence. Oakes' administrative remedies were already unavailable—when the IIU began investigating Oakes' claims against Raji. See Brightwell, 2015 WL 4984505, at *9 ("Plaintiff met his burden to exhaust upon the initiation of [an IIU] investigation."). Thus, Oakes was not required to appeal dismissal of the January 15 ARP to the IGO in the first place, making any procedural defect with his appeal inconsequential. The court in Brightwell rejected the same Woodford argument, see id. at *7, because even though the prisoner refused to participate in the IGO hearing pertaining to his appeal,

> Where the relevant administrative rules provide clear grounds for a procedural dismissal of the complaint, it seems disingenuous to suggest that a prisoner ought to appeal such a dismissal even if he knows it was rightly decided and has no legal or factual arguments that the complaint was inappropriately dismissed.

Id. at *9. Here, too, Oakes's failure to submit required paperwork to the IGO on appeal does not amount to a failure to exhaust his administrative remedies. The existence of an IIU investigation provided clear procedural grounds for the prison to dismiss his January 15 ARP, leaving Oakes no available remedies. Accordingly, the Court concludes Oakes exhausted his grievance against Raji.

Oakes never alleged a denial of medical care claim in his December 18 ARP or his January 15 ARP. Nevertheless, because the existence of an IIU investigation into Oakes' claims

"shut[] down the ARP process," Oakes did not have any available administrative remedies to bring his claim. See Brightwell, 2015 WL 4984505, at *9; see also Ross, 136 S.Ct. at 1860 (holding that even though the prisoner did not pursue an ARP grievance, the policy of dismissing grievances when there is an IIU investigation "raise[s] questions" about whether administrative remedies are available).

Accordingly, the Court concludes Oakes exhausted his grievance against Raji and his denial of medical care claim.[4]

### 3. Collateral Estoppel

Defendants next argue that to the extent any of Oakes' claims survive the exhaustion requirement, the collateral estoppel doctrine precludes Oakes' lawsuit. Generally, motions to dismiss under Rule 12(b)(6) address the legal sufficiency of a complaint rather than the existence of meritorious affirmative defenses; when the existence of such a meritorious defense, such as collateral estoppel, is apparent on the face of the complaint, however, dismissal is appropriate. See Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). Thus, the Court will address Defendants' collateral estoppel defense by examining the allegations contained in the Complaint.

---

[4] Defendants only raised an exhaustion defense for Oakes's claims against Raji and his denial of medical care claim. For the foregoing reasons, the Court concludes Oakes also exhausted his administrative remedies against Stone, Uwalor, and Mason because his administrative remedies against them were unavailable as a result of the IIU investigation. (See Compl. at 33 (Commissioner of Corrections dismissing the December 18 ARP because there was a pending IIU investigation)).

Oakes appealed his claims against Barnett through all three stages of Maryland's administrative process, with an administrative law judge ("ALJ") issuing an opinion that his grievance had no merit. (Oakley Decl. Ex. 11, at 2). For the reasons described above, Oakes was not required to appeal his claims against Barnett after the Commissioner of Corrections dismissed the December 18 ARP. Nor does Oakes' appeal of his claims against Barnett bear on whether administrative remedies were available to him. Indeed, Brightwell concluded there were no cases before it "suggesting that an inmate who has legally exhausted his administrative remedies has the ability to undo his exhaustion by way of other attempts at relief." 2015 WL 4984505, at *9.

Oakes attached the ALJ's previous opinion to his Complaint. (See Compl. at 1–8). Defendants premise their collateral estoppel defense upon this ALJ opinion. The Court will therefore examine the ALJ opinion to evaluate Defendants' collateral estoppel argument.

Collateral estoppel precludes re-litigation of issues of fact or law that are identical to issues which have been actually decided "in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." Weinberger v. Tucker, 510 F.3d 486, 491 (4th Cir. 2007) (citation omitted). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Collateral estoppel applies to claims raised in Maryland courts "only if (1) the issue presented is identical to the issue previously adjudicated, (2) the party to be estopped was a party in the prior action, and (3) there was a prior final judgment on the merits." Alston v. Robinson, 791 F. Supp. 569, 578 (D.Md. 1992) (citing O'Reilly v. County Bd. of Appeals, 900 F.2d 789, 791 (4th Cir. 1990)).

Here, Oakes appealed the December 18 ARP's dismissal to the IGO, but only with regards to his claims against Barnett. (Oakley Decl. Ex. 11, at 1–2, ECF No. 14-14). The IGO referred the case to an ALJ, who held a hearing. (Id.). At the hearing, Oakes testified and presented three witnesses: Barnett, Burton, and Mason. (Compl. at 7). Oakes subpoenaed Uwalor and Stone to testify, but they did not appear. (Id. at 9). In deciding Oakes' grievance had no merit, the ALJ credited Detective Burton's statement that the videotape showed a very brief scuffle when Oakes came out of the medical department, but that the incident did not amount to an assault. (Id. at 6). Nothing in the summary of evidence indicates that the ALJ considered Burton's full IIU report or that the ALJ viewed the video evidence. Further, the ALJ

12

did not credit Oakes' claim of injury arising out of the property area incident, even though Burton stated that he had viewed photographs of Oakes' black eye and facial cuts during the IIU investigation. (Id.). In short, the ALJ's examination of Oakes's allegation that Barnett assaulted him near the property room did not take much of the available documentary evidence compiled by Burton into consideration.

Oakes availed himself of a prisoner representative at the hearing. (Id. at 5). That representative failed to object to the IGO's omission of the initial incident involving Raji, and did not object to the IGO summary that failed to outline Uwalor's role in the property room incident. (Id.). Instead, the representative allowed the allegations against Raji and Uwalor to be withdrawn. (Id. at 4, 8). The ALJ opinion does not show that Oakes had the "full and fair opportunity to litigate" his claims against Barnett. See Weinberger, 510 F.3d at 491. Accordingly, the Court concludes that Oakes is not collaterally estopped from pursuing his allegation of assault near the property room against Barnett.

### 4. Excessive Force

The Court will deny Defendants' Motion as to Oakes' claim for excessive force. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. Whitley v. Albers, 475 U.S. 312, 321 (1986). The absence of significant injury, alone, is not dispositive of a claim of excessive force. Wilkins v. Gaddy, 559 U.S. 34 (2010). The

13

extent of injury incurred is one factor whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. Id. at 38.

In exhibits attached to the Complaint, Oakes alleges that the first use of force incident involved Raji, without provocation, throwing him to the ground. (Compl. at 4). Oakes states that he was taken to the medical department following this incident because of the bruising, swelling, and bloody nose he suffered as a result. (Id. at 4–5). He alleges a second incident where an unknown officer grabbed him and twisted his wrists. (Id. at 5). Barnett and Uwalor then forced Oakes to the ground and kicked him in the face, back, head and private area. (Id.). He alleges he was then pulled up and thrown into a wall. (Id. at 4–5). Oakes asserts this second incident was videotaped by Stone and that he sustained a swollen face, black eyes, scrapes, cuts and bruises, blood in his urine, and partial loss of movement in his left wrist which continued for several days. (Id. at 5–6, 9).

The Court concludes Oakes sufficiently alleged that Defendants used unlawful excessive force when Raji allegedly threw Oakes to the ground unprovoked and when Defendants later repeatedly hit Oakes. Accordingly, Defendants' Motion is denied as to Oakes's excessive force claim.

     **5.**     **Denial of Medical Care**

Oakes alleges that he "has made numerous requests of the institutional medical staff, for pain medication and follow up care. However, all attempts have gone without treatment." (Compl. at 44). Yet elsewhere in his Complaint, Oakes alleges he saw the medical department on December 18, 2012 for injuries to his wrist, nose bleedings, and a bruise on his face, and states "I have medical reports on file to prove I was assaulted by Raji and I have the paperwork

from [Physicians' Assistant John] Moss." (Id. at 26). Oakes only attaches an incomplete version of the medical report from his visit with Moss. (See id. at 35).[5] Defendants' Motion, however, attaches all three pages of the same document to its Motion. (Mot. Dismiss Alt. Mot. Summ. J. Ex. 9 at 71, ECF No. 14-12). The complete medical report prevails at the 12(b)(6) stage. See RaceRedi Motorsports, 640 F.Supp.2d at 664 (citing Fayetteville Investors, 936 F.2d at 1465). After considering the Complaint and the medical report, the Court concludes Oakes can prove no set of facts sufficient to support his denial of medical care claim.

The Eighth Amendment also prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976) (citing Furman v. Georgia, 408 U.S. 238, 392–93 (1972)). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. Estelle, 429 U.S. at 106. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention, but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

A prisoner's disagreement with a prescribed course of treatment does not establish deliberate indifference and, therefore, does not state a claim. See Peterson v. Davis, 551 F.Supp.

---

[5] Specifically, the document Oakes attaches says page "1/3" but Oakes did not attach a second or third page. (Id.).

137, 146 (D.Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Likewise, claims of medical negligence or disputed questions of medical judgment are not cognizable because they do not involve deliberate indifference.  See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (stating questions of medical judgment are not subject to judicial review).  Indeed, the "mere failure to treat all medical problems to a prisoner's satisfaction . . . is insufficient to support a claim under § 1983."  Peterson, 551 F.Supp. at 146; accord Fore v. Goodwin, 407 F.Supp. 1145, 1146 (citing Cole v. Williams, 526 F.2d 588 (4th Cir. 1975)) ("A prisoner cannot be ultimate judge of what medical treatment is necessary or proper . . . .").

Here, the day after the alleged assaults by Defendants, Oakes saw Moss and complained of injuries to the face, ribs, left wrist and wright ankle.  (Mot. Dismiss Alt. Mot. Summ. J. Ex. 9 at 69).  Moss noted redness under the right upper eyelid, bruising below the left eye, and mild swelling of the right foot.  (Id. at 69–70).  Moss prescribed Naproxen for ten days, provided a warm compress, and ordered a facial x-ray.  (Id.).  The x-ray, read on December 21, 2012, showed no evidence of acute fracture, dislocation or subluxation.  (Id. at 72).  Oakes's disagreement with the care offered does not establish deliberate indifference and, therefore, does not state a claim.  The Court will, therefore, grant Defendants' Motion as to Oakes's claim for denial of medical care.

### 6. Retaliation

The Court will grant Defendants' Motion as to Oakes' claim of retaliation.  In order to prevail on a claim of retaliation, Oakes must first allege "the retaliatory act was taken in response to the exercise of a constitutionally protected right."  Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995).  Second, Oakes must demonstrate he suffered some adverse impact or actual injury.  Am. Civil Liberties Union of Md., Inc. v. Wicomico Cty., 999

F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Board of Governors of Univ. of North Carolina, 902 F.2d 1134, 1140 (4th Cir. 1990)). Third, Oakes must allege "that but for the retaliatory motive the complained of incident[s] . . . would not have occurred." Scott v. Kelly, 107 F.Supp.2d 706, 711 (E.D.Va. 2000), aff'd sub nom. Scott v. Moore, 6 F. App'x 187 (4th Cir. 2001). Additionally, "[i]n the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting Adams, 40 F.3d 72, 74 (4th Cir. 1994)).

Here, Oakes appears to assert that the incident involving Barnett, Mason, Lane, Uwalor, and Stone was in retaliation for his ARP grievance against Raji. In an exhibit attached to the Complaint, Oakes alleges that at the outset of the incident, Barnett asked Oakes, "Do we have a problem here[?]" and Oakes responded, "No, I'm trying to put in a Report . . . I'm trying to report the assault [by Raji.]" (Compl. at 31). Oakes states Barnett began assaulting him after his response. (Id.). At the end of the assault, Barnett allegedly told Oakes "report this" and informed Oakes he stole Oakes's television. (Id. at 12). Oakes also asserts after he requested a copy of a video of the second incident for his grievances, officers began "an intimidation campaign" against him. (Id. at 44). Oakes does not have a constitutionally protected right in this Circuit to participate in an administrative remedy or other grievance process voluntarily established by the state. Adams, 40 F.3d at 75. Accordingly, the Court concludes that Oakes fails to state a retaliation claim.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF Nos. 14, 24) is GRANTED in part and DENIED in part. The Court,

in its discretion, will GRANT Oakes's Motion to Appoint Counsel (ECF No. 39).  A separate Order follows.

Entered this 18th day of November, 2016.                    /s/
                                          George L. Russell, III
                                          United States District Judge